# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| EDUARDO ALVARADO CHAVERRI, et al., | § § § | No. 519, 2019 |
| Plaintiffs Below, Appellants, | § § § | Court Below: Superior Court of the State of Delaware |
| v. | § § | C.A. No. N12C-06-017 |
| DOLE FOOD COMPANY, INC., et al., | § § § § | |
| Defendants Below, Appellees. | § § § | |

Submitted: October 14, 2020
Decided: January 12, 2021

Before **SEITZ**, Chief Justice; **VALIHURA**, **VAUGHN**, **TRAYNOR**, and **MONTGOMERY-REEVES**, Justices, constituting the Court *en banc*.

Upon appeal from the Superior Court. **AFFIRMED**.

Scott M. Hendler, Esquire (*Argued*), and Rebecca Webber, Esquire, Hendler Flores, PLLC, Austin, TX, and Andrew C. Dalton, Esquire, Dalton and Associates, P.A., Wilmington, DE, for Appellants.

Andrea E. Neuman, Esquire (*Argued*), Gibson Dunn & Crutcher LLP, New York, NY, William E. Thomson, Esquire, Gibson Dunn & Crutcher LLP, Los Angeles, CA, and Jennifer C. Wasson, Esquire, and Stephanie E. O'Byrne, Esquire, Potter Anderson & Corroon LLP, Wilmington, DE, for Appellees, Dole Food Company, Inc., Dole Fresh Fruit Company, Standard Fruit Company, and Standard Fruit & Steamship Company.

Boaz S. Morag, Esquire, Cleary Gottlieb Steen & Hamilton LLP, New York, NY, and James W. Semple, Esquire, Cooch and Taylor, P.A., Wilmington, DE, for Appellee Del Monte Fresh Produce, N.A., Inc.

Adam V. Orlacchio, Esquire, and Brandon W. McCune, Esquire, Blank Rome LLP, Wilmington, DE, for Appellees, Chiquita Brands International, Inc., Chiquita Brands L.L.C., and Chiquita Fresh North America L.L.C.

Michael L. Brem, Esquire, Schirrmeister Diaz-Arrastia Brem LLP, Houston, TX, and Ryan D. Stottman, Esquire, and Barnaby Grzaslewicz, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE, for Appellee, The Dow Chemical Company.

Craig Stanfield, Esquire, King & Spalding LLP, Houston, TX, and Kelly E. Farnan, Esquire, Richards Layton & Finger, P.A., Wilmington, DE, for Appellee, Shell Oil Company.

Timothy Jay Houseal, Esquire, and Jennifer M. Kinkus, Esquire, Young Conaway Stargatt & Taylor LLP, Wilmington, DE, for Appellee, Occidental Chemical Corporation.

John C. Phillips, Jr., Esquire, Phillips, Goldman & Spence, P.A., Wilmington, DE, for Appellee, AMVAC Chemical Corporation.

**VAUGHN**, Justice, for the Majority:

# I.     INTRODUCTION

The Plaintiffs-Appellants worked on banana plantations in Costa Rica, Ecuador, and Panama. They filed their complaint in this case in 2012, claiming that while working on the plantations they suffered personal injuries from a pesticide known as 1, 2, Dibromo 3, Chloropropane ("DBCP"). The Defendants-Appellees are numerous companies alleged to have caused the Plaintiffs' exposure to DBCP and their resulting injuries. In 2013 the Superior Court dismissed the Plaintiffs' complaint under what has sometimes been referred to as Delaware's *McWane* doctrine (the "Dismissal Order"). On December 31, 2018 the Plaintiffs filed a motion to vacate the Dismissal Order under Superior Court Civil Rule 60(b)(6). The Superior Court denied the Plaintiffs' motion, finding that the motion was untimely and the Plaintiffs failed to show extraordinary circumstances for vacating the judgment. The Plaintiffs have appealed from that order. For the reasons that follow, we have concluded that the Superior Court's order denying the motion should be affirmed.

# II.     FACTS AND PROCEDURAL HISTORY

## A.

We set forth the facts and the extensive procedural history of this case to the extent necessary to decide the appeal.

As just mentioned, the Plaintiffs' claims arise from injuries allegedly caused by exposure to DBCP while working on banana plantations in Costa Rica, Ecuador, and Panama.[1] The Defendants are U.S. corporations that were involved in the manufacture and distribution of DBCP or who owned and operated the banana farms where the Plaintiffs worked.[2]

Litigation initially began in Texas state court in 1993 with the filing of a class action on behalf of all persons allegedly exposed to DBCP between 1965 and 1990 (*Carcamo v. Shell Oil Co.*).[3] The Plaintiffs were members of the class. The case was removed to the United States District Court for the Southern District of Texas, where it was consolidated with another DBCP case, *Delgado v. Shell Oil Co.* (together, the "Texas Federal Action").[4] In 1995 the Texas Federal Action was dismissed on grounds of *forum non conveniens*. The dismissal order included a "return jurisdiction" clause, however, which provided that the actions could be reinstated if the courts in the plaintiffs' home countries refused to hear their claims. Such turned out to be the case, and several of the original plaintiffs in the Texas Federal Action moved to reinstate the action in the Texas district court pursuant to

---

[1] Unless otherwise cited, the facts are drawn from the Superior Court opinion below, *Chaverri v. Dole Food Co., Inc.*, 220 A.3d 913 (Del. Super. Ct. 2019).
[2] *Marquinez v. Dow Chem. Co.*, 183 A.3d 704, 706 (Del. 2018) (en banc) (the defendants in *Marquinez* are nearly identical to the Defendants in this this case).
[3] *See Delgado v. Shell Oil Co.*, 890 F. Supp. 1324 (S.D. Tex. 1995).
[4] *Id.*

2

the return jurisdiction clause.[5]   For procedural reasons not relevant here, the Texas district court remanded *Carcamo* to the Texas state court without ruling on the reinstatement motion.[6]   The Texas state court granted the plaintiffs' motion to reinstate the action.   A subset of the original plaintiffs then again moved for class certification in the Texas state court.   On June 3, 2010 the *Carcamo* case ended when the Texas state court denied class certification.[7]

A little over a month later, on July 21, 2011, Jose Rufino Canales Blanco, a member of the failed *Carcamo* class, filed suit on behalf only of himself in the Superior Court.   Other members of the failed class, including the Plaintiffs in this action, filed suits in the U.S. District Court for the Eastern District of Louisiana. Those cases were consolidated into a single action (the "Louisiana Action").[8]

In the *Blanco* case, the defendants moved for judgment on the pleadings, asserting that Blanco's case was barred by the statute of limitations.[9]   On May 31, 2012, the Superior Court judge assigned to the case indicated by letter to the parties that he intended to deny the motion on the grounds that the proceedings in Texas tolled the statute of limitations.   The Superior Court followed up with an opinion issued on August 8, 2012 that recognized cross-jurisdictional tolling and found that

---

[5] *See Rodriguez Delgado v. Shell Oil Co.*, 322 F. Supp. 2d 798, 801-02, 816-17 (S.D. Tex. 2004).
[6] *Id*. at 817.
[7] *Carcamo v. Shell Oil Co.*, No. 93-C-2290 (Tex. Dist. Ct. Brazoria Cty. June 3, 2010).
[8] *Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556 (E.D. La. 2012).
[9] *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *5 (Del. Super. Ct. Aug. 8, 2012).

Blanco's complaint was filed within the statute of limitations. An interlocutory appeal was then taken to this Court which presented a narrow certified question: "Does Delaware recognize the concept of cross-jurisdictional tolling?"[10] This Court answered the question in the affirmative. This Court's opinion confined itself to the certified question and did not make any factual determination as to when the statute of limitations was tolled.[11]

Within 24 hours after the Superior Court judge assigned to *Blanco* indicated that he would deny the defendants' motion for judgment on the pleadings, Plaintiffs' counsel filed three actions in Delaware. One was this case, filed on June 1, 2012. The other two were *Chavez v. Dole Food Company, Inc.* and *Marquinez v. Dow Chemical Company*, which were filed in the federal district court. The three suits alleged the same or substantially the same DBCP claims as were asserted in the Louisiana Action against the same or substantially the same defendants. Many of the plaintiffs in all three of these cases were also plaintiffs in the Louisiana Action.

On August 2, 2012 the Defendants filed a motion to dismiss this case on grounds of *forum non conveniens* because the complaint mirrored the one the Plaintiffs filed in the Louisiana Action. The Plaintiffs opposed the Defendants' motion on the basis that the Louisiana Action might be time-barred. The Plaintiffs

---

[10] *Dow Chem. Corp. v. Blanco*, 67 A.3d 392, 394 (Del. 2013).
[11] The *Blanco* case was ultimately dismissed by stipulation of the parties.

4

were correct. On September 17, 2012 the Louisiana district court dismissed the Louisiana Action with prejudice under the Louisiana prescription statute.[12] While the motion to dismiss was still pending in Superior Court, the Fifth Circuit affirmed the Louisiana district court's dismissal of the Plaintiffs' Louisiana Action.[13]

The Superior Court's dismissal of this case came on November 8, 2013.[14] Relying upon this Court's decisions in *McWane v. McDowell*[15] and *Lisa v. Mayorga*,[16] the court concluded that dismissal on *forum non conveniens* grounds was justified because "Plaintiffs' Louisiana Action was filed prior to the Delaware Action. The Louisiana Action was filed in Louisiana District Court, which is a court capable of prompt and complete justice. The two cases not only arise from the same nucleus of facts, but they have identical parties and allegations."[17] The Superior Court rejected the Plaintiffs' contention that *McWane* and *Lisa* did not apply because the Louisiana Action was no longer pending. The Plaintiffs appealed, and on October 20, 2014 this Court affirmed the Superior Court's judgment of dismissal "on the basis of and for the reasons assigned by the Superior

---

[12] *See Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556, 571-72, 574 (E.D. La. 2012).

[13] *See Chaverri v. Dole Food Co.*, 546 F. App'x 409, 413-15 (5th Cir. 2013).

[14] *Chaverri v. Dole Food Co., Inc.*, 2013 WL 5977413 (Del. Super. Ct. Nov. 8, 2013).

[15] 263 A.2d 281 (Del. 1970).

[16] 993 A.2d 1042 (Del. 2010).

[17] *Chaverri*, 2013 WL 5977413, at *2. The court stated the three prong *McWane* standard is met when "(1) there is a prior action pending elsewhere (2) in a court capable of doing prompt and complete justice, and (3) involving the same parties and the same issues." *Id*. at *1 (citing *McWane*, 263 A.2d at 283).

5

Court."[18]

**B.**

On December 28, 2018 Plaintiffs filed a Rule 60(b)(6) motion to vacate the

Dismissal Order.    Plaintiffs argued that

> Three groundbreaking rulings in Delaware—one by the
> Delaware Supreme Court and two by the Third Circuit
> Court of Appeals—reviewing decisions by the District
> Court of Delaware in similarly situated cases, have
> operated to make this Court's November 2013 [Dismissal]
> Order inconsistent with those rulings.    In the interest of
> justice, the Court should vacate the judgment to provide
> Plaintiffs with the same opportunity for a trial on the
> merits as their similarly situated counterparts whose cases
> are pending in Delaware federal court.[19]

The three decisions referred to involve the above-mentioned *Marquinez* and

*Chavez* cases.

In *Chavez*, the district court dismissed the plaintiffs' claims under the federal

first-filed rule.[20]    The district court explained "[t]he first-filed rule is that when two

federal district courts have the same case, the court which has the first case is the

---

[18] *Chaverri v. Dole Food Co.*, 2014 WL 7367000 (Del. Oct. 20, 2014) (en banc) (ORDER).    In footnote 78, the dissent criticizes our statement of the procedural history of the case as a "truncated version" which "lines up only the outer edges and corners of the puzzle and ignores the large mosaic in the middle."    The dismissal order properly focused on the Louisiana Actions.    We believe that the dissent places undue emphasis on the procedural history preceding the Louisiana Actions.    We remain satisfied that our statement of the procedural history is sufficient to explain our analysis and the result we reach.

[19] App. to Appellant's Opening Br. at A157-58 (Pls' Mot. Vacate J. Rule 60(b)(6)).

[20] *Chavez v. Dole Food Co.*, 2012 WL 3600307, at *1-2 (D. Del. Aug. 21, 2012).

6

one that should decide the case."[21]   The district court concluded that because the plaintiffs had filed the Louisiana Action first, the Delaware case should be dismissed with prejudice.

Initially, a Third Circuit panel affirmed the district court's decision in a split ruling.[22]   A rehearing *en banc* was granted, and the Third Circuit reversed the district court's dismissal.[23]   It described the question whether the district court's dismissal with prejudice was an abuse of discretion as a question of first impression in that circuit.   It concluded "that, in the vast majority of cases, a court exercising its discretion under the first-filed rule should stay or transfer a second-filed suit . . . [and] [a] dismissal *with prejudice* will almost always be an abuse of discretion."[24] That Third Circuit decision is the first of the three Delaware decisions the Plaintiffs refer to in their motion.

In the *Marquinez* case, the district court issued two orders.   The first order dismissed fourteen plaintiffs' claims under the federal first-filed rule based on their identical claims in the Louisiana Action.[25]   In the second order, the court decided that tolling of the statute of limitations on the plaintiffs' claims, which began when the Texas class action was filed in 1993, ended, and the statute resumed running in

---

[21] *Id*. at *1.
[22] *Chavez v. Dole Food Co.*, 796 F.3d 261 (3d Cir. 2015).
[23] *Chavez v. Dole Food Co.*, 836 F.3d 205 (3d Cir. 2016).
[24] *Id*. at 220-21 (emphasis in original).
[25] *Marquinez v. Dole Food Co., Inc.*, 2013 WL 12309514, at *1 (D. Del. Sept. 19, 2013).

7

1995 when the Texas Federal Action was dismissed on grounds of *forum non conveniens*.[26] The court then granted the defendants' motion for summary judgment against the remaining plaintiffs, finding Delaware's statute of limitations barred their claims.[27] The *Marquinez* plaintiffs appealed, and the Third Circuit certified a question to this Court asking whether class action tolling ended when the Texas Federal Action was dismissed in 1995, and if it did not, when did it end.[28]

We answered the initial part of the question in the negative, and further answered that "[c]lass action tolling ended when class action certification was denied in Texas state court on June 3, 2010."[29] In reaching this conclusion, we adopted the rule that "cross-jurisdictional class action tolling ends only when a sister trial court has clearly, unambiguously, and finally denied class action status."[30] Our answer to the certified question is the second decision referred to in the

---

[26] *Marquinez v. Dole Food Co.*, 45 F. Supp. 3d 420, 423 (D. Del. 2014).
[27] *Id*. at 426.
[28] Specifically, the Third Circuit certified the following question:

> Does class action tolling end when a federal district court dismisses a matter for *forum non conveniens* and, consequently, denies as moot "all pending motions," which include the motion for class certification, even where the dismissal incorporated a return jurisdiction clause stating that "the court will resume jurisdiction over the action as if the case had never been dismissed for f.n.c.," *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324, 1375 (S.D. Tex. 1995)? If it did not end at that time, when did it end based on the procedural history set forth above?

*Marquinez v. Dow Chem. Co.*, 183 A.3d 704, 705 (Del. 2018) (en banc). The *Delgado* case cited in the Third Circuit's certified question is the Texas Federal Action.
[29] *Id*. at 705-06.
[30] *Id*. at 711.

Plaintiffs' motion.

After the Third Circuit received our answer to the certified question, it vacated the district court's orders and remanded the case for further proceedings consistent with our answer to the certified question and its federal first-filed ruling in *Chavez*.[31] That order is the third Delaware decision referred to in the Plaintiffs' motion.

## C.

The Superior Court's denial of the Plaintiffs' motion to vacate under Rule 60(b)(6) rests on two grounds. The court first held that the Plaintiffs' motion was untimely. The court "measure[d] the reasonableness of Plaintiffs' delay from the time that Plaintiffs' 'groundbreaking' decisions issued to the time at which Plaintiffs filed the Motion to Vacate,"[32] and considered all circumstances surrounding the delay. The court stated that the seven-month delay between the issuance of the Third Circuit's last mentioned order, dated May 29, 2018, and the filing of the motion to vacate, was not reasonable under the circumstances. The court rejected the Plaintiffs' explanations for this delay, which were that "(1) Plaintiffs' counsel was overburdened by the other ongoing DBCP cases; and (2) preparing the motion required significant time and research in light of the complex history of this case."[33] The court concluded that neither explanation was persuasive. The Plaintiffs' Texas

---

[31] *Marquinez v. Dole Food Co., Inc.*, 724 F. App'x 131, 132 (3d Cir. 2018).
[32] *Chaverri*, 220 A.3d at 921.
[33] *Id.* at 922.

counsel in this case also represented the plaintiffs in the three cases the Plaintiffs now rely upon and were therefore immediately aware of each ruling. The court also reasoned that the complexity of the case was attributable to Plaintiffs' counsel's own strategic decisions—designed in the court's eyes, to "distribut[e] the risk to the putative class"—to file actions in various jurisdictions across the country, including in both the federal and state courts in Delaware.[34] Therefore, the court held that the Plaintiffs' delay was unreasonable.

The court also ruled that even if the Plaintiffs' motion was timely filed, it "would fail on the merits because it does not present extraordinary circumstances."[35] In reaching this conclusion, the court first found that the class-action tolling decision in *Marquinez* was not applicable because the Dismissal Order dismissed the Plaintiffs' claims under the *McWane* doctrine and did not address tolling. Second, the court found that the cases involving the federal first-filed rule were not

---

[34] *Id.* at 917. We are observing here that the Superior Court's statement about distribution of risk was an inference the Superior Court drew from the record before it, an inference we do not find unreasonable. The dissent makes much of Plaintiffs' counsel's explanation at oral argument that the decision to split cases between the Superior Court and the federal district court were influenced by perceptions of court costs as between the two courts. This explanation was given as an answer to a question posed by one of the Justices at oral argument. In the argument before the Superior Court on the motion to reopen, Plaintiffs' local counsel explained that there were "institutional costs that came with filing in federal court versus state court." Local counsel further explained, however, that "the decision was made to split them, in part, on legal basis." In explaining the "legal basis," Plaintiffs' local counsel stated that "[t]he legal reasoning being that there's no active forum at the time that these were filed that was sure to hear their cases." App. to Appellant's Opening Br. at A088.

[35] *Chaverri*, 220 A.3d at 922.

10

applicable. The court stated that while "the federal first-filed rule and Delaware's first-filed rule, as set forth under the *McWane* Doctrine, sound similar in name, they are not the same in application."[36] The court explained that

> First, the underlying rationales of each doctrine are distinct. The federal first-filed rule is a federal abstention doctrine based on "principles of comity and equity."[37] Those principles give way, however, when a "district court's duty to decide cases within its jurisdiction" becomes unavoidable due to the parties' inability to present their claims to another court.[38] Delaware's *McWane* Doctrine, by contrast, is an extension of Delaware's *forum non conveniens* law that is intended to promote "the orderly and efficient administration of justice" by permitting Delaware courts to either stay or dismiss a second-filed action out of deference to the forum in which the parties first filed.[39] The doctrine seeks to avoid "the wasteful duplication of time, effort, and expense that occurs when judges, lawyers, parties, and witnesses are simultaneously engaged in the adjudication of the same cause of action in two courts."[40]

The court then discussed how the principles differ in their application to second-filed actions.

> Second, and as a result of the above distinctions, the two doctrines differ in how they permit courts to treat second-filed actions. Under the federal rule, courts exercising discretion under the rule, "in the vast majority of cases," should either stay or transfer the second-filed suit.[41] That

---

[36] *Id.* at 924.

[37] *Id.* (quoting *Equal Emp't Opportunity Comm'n v. Univ. of Pa.*, 850 F.2d 969, 978 (3d Cir. 1988)).

[38] *Id.* (quoting *Chavez*, 836 F.3d at 220).

[39] *Id.* (quoting *McWane*, 263 A.2d at 282-83).

[40] *Id.* (quoting *McWane*, 263 A.2d at 283).

[41] *Id.* (quoting *Chavez*, 836 F.3d at 220).

11

requirement preserves the district court's ability to hear the parties' case in the event that the first-filed case is dismissed and the second-filed action "is not truly duplicative of the first." [42]   Such a requirement is consistent with the "district court's duty to decide cases within its jurisdiction."[43]   No such duty exists under the *McWane* doctrine where, as here, the plaintiffs chose to first file their claims in another jurisdiction.   Instead, the *McWane* Doctrine permits dismissal of a plaintiff's second-filed action to avoid inconsistent and conflicting rulings.[44]   Such a rule upholds the doctrine's underlying policy of avoiding wasteful duplication of efforts.[45]

Finally, the court rejected the Plaintiffs' contention that denying their motion would produce inconsistent results.

## D.

The Plaintiffs raise three claims on appeal.   The first is that the Superior Court committed an error of law and abused its discretion by failing to adhere to established Delaware jurisprudence in analyzing the Plaintiffs' assertion of extraordinary circumstances under Rule 60(b)(6).   The second is that the Superior Court misapplied the law by giving preference to "finality" of decisions over Delaware's public policy favoring adjudication on the merits, and in so holding, erred when finding the Plaintiffs' request for relief under Rule 60(b)(6) untimely. The third is that the Superior Court committed errors of law in a series of "non-

---

[42] *Id*. (quoting *Chavez*, 836 F.3d at 220).
[43] *Id*. (quoting *Chavez*, 836 F.3d at 220).
[44] *Id*. (citing *Lisa*, 993 A.2d at 1048).
[45] *Id*. (citing *Lisa*, 993 A.2d at 1048).

distinctions" to justify its disregard of *Chavez* and *Marquinez.*

In response to these claims, the Defendants contend that the Superior Court did not abuse its discretion in denying the motion to vacate based on the Plaintiffs' unreasonable delay, the Superior Court did not abuse its discretion in denying the motion to vacate based on the Plaintiffs' failure to set forth "extraordinary circumstances," and the Plaintiffs cannot obtain Rule 60(b)(6) relief as to defendants they excluded from their prior appeal.

### III. STANDARD OF REVIEW

Superior Court Rule 60 controls motions to vacate a judgment. It provides that, "[o]n motion and upon such terms as are just, the Court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for . . . any other reason justifying relief from the operation of the judgment."[46]

"Relief under Rule 60(b)(6) is an extraordinary remedy which requires a showing of 'extraordinary circumstances.'"[47] "The 'extraordinary circumstances' standard defines the words, 'any other reason justifying relief,' in Rule 60(b)(6) as 'vest[ing] power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.'"[48] This Court recognizes that,

---

[46] Super. Ct. Civ. R. 60(b)(6).
[47] *Shipley v. New Castle County*, 975 A.2d 764, 767 (Del. 2009) (citing *Jewell v. Div. of Soc. Servs.*, 401 A.2d 88 (Del. 1979)).
[48] *Senu-Oke v. Broomall Condo., Inc.*, 2013 WL 5232192, at *1 (Del. Sept. 16, 2013) (TABLE) (alteration in original) (quoting *Jewell*, 401 A.2d at 90).

13

"[a] change in the decisional law may be the basis for reopening a judgment only where the totality of circumstances is found to be extraordinary, such as when the change in law has come about in a related case."[49] "Because of the significant interest in preserving the finality of judgments, Rule 60(b) motions are not to be taken lightly or easily granted."[50]

"We review a Superior Court order denying a motion to vacate a judgment under that rule for abuse of discretion."[51] "An abuse of discretion occurs when a court has . . . exceeded the bounds of reason in view of the circumstances, or . . . so ignored recognized rules of law or practices so as to produce injustice."[52]

## IV. DISCUSSION

The Plaintiffs contend that this Court's class-action tolling decision in *Marquinez* and the Third Circuit's "first-filed" ruling in *Chavez* were rulings on matters of first impression in Delaware. They argue that the effect of these rulings is that the similarly situated *Marquinez* and *Chavez* plaintiffs may proceed to trial on the merits while the Plaintiffs in this case cannot. They continue that they moved in Superior Court to reopen the case, in the interest of justice, because a change in law that results in disparate treatment of similarly situated plaintiffs

---

[49] *Walls v. Delaware State Police*, 1991 WL 134488, at *2 (Del. June 17, 1991) (TABLE).
[50] *Senu-Oke*, 2013 WL 5232192, at *1 (quoting *Wilson v. Montague*, 2011 WL 1661561, at *2 (Del. May 3, 2011) (TABLE)).
[51] *Id*. (citing *Stevenson v. Swiggett*, 8 A.3d 1200, 1204 (Del. 2010)).
[52] *Id*. (quoting *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 633-34 (Del. 2001)).

14

qualifies as extraordinary circumstances.

This Court's decision in *Marquinez* regarding class-action tolling and the Third Circuit's follow-up order establish that *Marquinez*, *Chavez*, and this case were all filed within the applicable statute of limitations. The class-action tolling decision, however, is of no help to the Plaintiffs because their case was not dismissed on statute of limitations grounds. The question is whether the Plaintiffs are entitled to relief from the Superior Court's dismissal on *forum non conveniens* grounds. The issue posed by that question is whether the alleged inconsistent treatment of the Plaintiffs in this case and the plaintiffs in *Marquinez* and *Chavez* constitutes extraordinary circumstances justifying relief from the Dismissal Order.

The Plaintiffs argue that the cases of *In re Terrorist Attacks on Sept. 11, 2001*, *Gondeck v. Pan American World Airways, Inc.*, *Smith v. Smith*, and *Pierce v. Cook & Co.* support their position. In *In re Terrorist Attacks*, two sets of plaintiffs filed suit in federal court seeking damages for injuries or deaths caused by the 9/11 attacks.[53] In both cases, the defendants argued that they were immune from suit under the Foreign Sovereign Immunities Act. In both cases, the plaintiffs argued that the Act was not a defense because their claims fell within a "tort exception" in the Act. In one case, *In re Terrorist Attacks*, the Second Circuit ruled that the "tort exception" was not available to the plaintiffs, resulting in judgment for the

---

[53] *In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 355 (2d Cir. 2013).

15

defendants.    Three years later, in *Doe v. Bin Laden*, the Second Circuit overruled

itself and found that the "tort exception" was available to the plaintiffs, allowing

them to proceed with their suit.    The plaintiffs in *In re Terrorist Attacks* moved for

relief from the judgment against them under Rule 60(b).    The district court denied

the motion.    The Second Circuit reversed, ruling that the motion for relief should

have been granted.    It found that extraordinary circumstances existed because the

*Doe v. Bin Laden* plaintiffs were allowed to proceed while the *In re Terrorist Attacks*

plaintiffs were not "based on opposite interpretations of the same statutory

provisions."[54]    Both suits rested "on a single underlying tort governed by the same

statute."[55]

In *Gondeck,* two men were killed in the same accident.[56]    The United States

Department of Labor awarded death benefits to the families of both under the

Longshoremen's and Harbor Workers' Compensation Act.    One federal district

court set aside the award to one family, which the Fifth Circuit affirmed.    The

Supreme Court denied certiorari.    A different federal district court affirmed the

award to the other family, which the Fourth Circuit affirmed.    Although not citing

Rule 60, the Supreme Court vacated its prior denial of certiorari, granted certiorari,

and reversed the Fifth Circuit's judgment.

---

[54] *Id*. at 358.
[55] *Id*. at 359.
[56] *Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25, 26-27 (1965).

*Smith* involved a change in the law concerning a military pension's status as marital property in property division proceedings.[57]   In 1981, the U.S. Supreme Court in *McCarty v. McCarty* ruled that state courts could not order a division of military retired pay as part of a distribution of marital property in a divorce proceeding.[58]   Prior to *McCarty*, the law of Delaware was that pension rights were marital property subject to property division.   The *Smith* property division was ordered in 1981 after *McCarty* was decided.   Following the rule set forth in *McCarty*, the Family Court did not divide the husband's military pension as marital property.   In 1982, the Uniformed Services Former Spouses' Protection Law was passed by Congress and signed by the President.   That law overruled *McCarty* by declaring that, under certain circumstances, state courts could divide military pensions as marital property.   The wife in *Smith* then moved to reopen the property division order in her case to consider division of the husband's military pension, which was valued at more than the other marital property combined.   The Family Court found that Congress, in passing the law, intended to give state courts the freedom to undo any harm created by *McCarty* by removing it retroactively.   In granting the wife's motion, the Family Court stated that "[t]o do otherwise would be to carve out a category of people whose cases happened to be decided between June

---

[57] *Smith v. Smith*, 458 A.2d 711, 712 (Del. Fam. Ct. 1983).
[58] *Id*. at 712-13 (citing *McCarty v. McCarty*, 453 U.S. 210 (1981)).

25, 1981 and September 8, 1982 and deprive them of substantial property interests which all other similarly-situated litigants have been awarded."[59]

In *Pierce*, occupants of a motor vehicle driven by Pierce were killed or injured in an accident with a vehicle driven by Edwards that occurred in Oklahoma.[60] Edwards was hauling wheat for defendant Cook. Pierce's widow and minor daughter brought suit in Oklahoma state court. On motion of Cook, the suit brought by Pierce's widow and minor daughter was removed to federal district court. A passenger in the Pierce vehicle, Mike Davis, also brought suit in Oklahoma state court. His suit was also removed to the federal district court. The Davis suit was dismissed by the district court on the motion of Davis. The Davis suit was later re-filed in Oklahoma state court by guardians for Davis, who was a minor. This maneuver apparently destroyed diversity and prevented removal of the second Davis suit to federal court. The federal district court granted Cook summary judgment on the suit of Pierce's widow and minor child on the basis of an Oklahoma Supreme Court decision holding that a shipper, in that case Cook, was not liable for the torts of an independent contractor, Edwards. The ruling was affirmed by the Tenth Circuit on appeal. In the new Davis suit, the Oklahoma trial court granted summary judgment to Cook on the basis of the same Oklahoma Supreme Court decision. On

---

[59] *Id*. at 715.
[60] *Pierce v. Cook & Co.*, 518 F.2d 720, 721 (10th Cir. 1975).

18

appeal, the Oklahoma Supreme Court overruled its earlier decision and held that the Davis case could proceed. Pierce's widow and minor child then moved in the Tenth Circuit under Rule 60(b) for relief from the judgment against them. The Tenth Circuit granted relief because Oklahoma state law was controlling on the issue which resulted in summary judgment against the widow and minor child, and that controlling law had been changed by the Davis case.

None of these cases support the Plaintiffs' argument. In *In re Terrorist Attacks*, the different initial results in the cases were based on opposite interpretations by the same federal court of the same federal statute. Nothing like that has happened here. *Gondeck* involved conflicting interpretations of the same federal statute between two federal circuit courts. Here there are no conflicting interpretations of the same law between two courts applying that same law. *Smith* involved a change in controlling law which would, if not remedied, result in litigants in property division proceedings in the same court receiving materially unequal treatment. By contrast, this case does not involve litigants in the same court being treated differently because of a change in controlling law. In *Pierce*, both the federal case and the state case were controlled by the same Oklahoma state law. *Chavez* and this case are not controlled by the same state law. We disagree with the dissent's view that these cases support the Plaintiffs' position. No case has been brought to our attention where a state court dismissed a case under state law

19

principles and then vacated the dismissal because of a ruling by a federal court applying federal law in a case in the federal system.

The Plaintiffs also argue that this Court's 2017 decision in *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.* clarifies the *McWane* doctrine and brings Delaware law into more of an alignment with *Chavez*. In *Gramercy,* this Court ruled that where the action in Delaware is a second-filed action, and a first-filed action in another jurisdiction has been dismissed on procedural grounds before the Delaware action was filed, *McWane* is not the proper focus for analysis.[61] In such a case, this Court reasoned, a motion to dismiss for *forum non conveniens* should be analyzed using the *Cryo-Maid* factors without *Cryo-Maid's* overwhelming hardship overlay.[62]

In *Aranda v. Philip Morris USA Inc.*, decided in 2018, this Court further addressed scenarios which can present themselves in *forum non conveniens* disputes: "a first- filed Delaware case with no case pending elsewhere (the *Cryo-Maid* test); a second-filed Delaware case with another first-filed case pending elsewhere (the *McWane* test);" and the *Gramercy* scenario where there is a second-filed Delaware case after another jurisdiction has dismissed a first-filed action for reasons not going

---

[61] *See Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1036 (Del. 2017) (en banc).
[62] *Id.*

20

to the merits of the case.[63]   We observed that "[a]ll these scenarios call upon the courts to apply, in one form or another, the same *forum non conveniens* factors."[64]   What differs is the strength of "background presumptions."[65]   Where Delaware is the first-filed action, the defendant must establish overwhelming hardship in order for Delaware courts to grant dismissal.   When Delaware is the second-filed action, the courts "have greater discretion in determining whether a stay or dismissal is proper."[66]   In *Aranda*, we held that the availability of another forum, although a factor to be considered, is not a threshold requirement under Delaware *forum non conveniens* law.   These clarifications or decisional changes in *Gramercy* and *Aranda* are not extraordinary circumstances which would justify reopening the judgment in this case.

This case involves the application of different legal principles by courts in separate, sovereign jurisdictions.   The Superior Court judge very ably explained the distinction between the federal first-filed rule and Delaware's *forum non conveniens* law in her opinion denying the Plaintiffs' motion, and how those distinctions permit the federal courts and our state courts to treat second-filed actions differently.   What has happened here is a consequence of filing cases asserting the

---

[63] *Aranda v. Philip Morris USA Inc.*, 183 A.3d 1245, 1250 (Del. 2018) (en banc).
[64] *Id*. at 1250.
[65] *Id*. at 1251.
[66] *Id*. (citing *Gramercy*, 173 A.3d at 1038).

same or similar claims in courts of different jurisdictions where different principles of law may apply. By dividing the Plaintiffs' claims between the federal and state courts of Delaware, Plaintiffs' counsel rendered them not similarly situated and created a foreseeable risk that procedural rules of the two jurisdictions may lead to different results. The developments in the *Marquinez* and *Chavez* federal cases after this case was dismissed are not extraordinary circumstances justifying relief from the Dismissal Order.

The dissent writes that *Chavez* contradicts what had been a foundational point in the Dismissal Order. We disagree. The cases do not involve conflicting application of the same law. Neither contradicts or undercuts the other.[67]

Since we find that the Plaintiffs have failed to show extraordinary circumstances for vacating the Dismissal Order and the Superior Court did not abuse its discretion in denying the Plaintiffs' motion on that ground, there is no need for us to address the Superior Court's ruling that the motion was untimely or the Defendants' argument concerning defendants excluded from the Plaintiffs' prior appeal. Yet because the dissent's strongest disagreement with the trial court's analysis appears to be centered on its treatment of the timeliness of the Plaintiffs'

---

[67] In footnote 114, the dissent states that we "ignore[] the key holding in *Chavez* critical to this analysis, namely, that the prior EDLA dismissal did not exert a claim preclusive effect as a matter of federal common law." The Superior Court's Dismissal Order and its denial of the motion to reopen are based on state law, not federal common law. Comity does not require us to modify Delaware state law to conform to federal common law.

22

motion, we offer our views on that issue.

We find no fault with the Superior Court's consideration, as one factor among many and as we did in *Schremp v. Marvel*,[68] of the "inflexible time" our rules of court allow litigants when perfecting an appeal (30 days), or moving for a new trial under Superior Court Rule 59(b) (10 days) or reargument in this Court (15 days). To be sure, had that been the Superior Court's sole consideration, we might view its timeliness ruling differently. But the court, recognizing its obligation to consider "all circumstances surrounding the delay,"[69] did not so limit its analysis.

Not surprisingly, the Superior Court cited the two reasons for the delay offered by the Plaintiffs—the burden of the many other DBCP cases counsel was handling and the time and research required to prepare the motion— and found them to be unpersuasive. We cannot say that the trial court's conclusion exceeds the bounds of reason, especially when we consider that Plaintiffs' motion, which was filed seven months after *Chavez* and fourteen months after *Gramercy* (arguably the most relevant starting point for the timeliness analysis)[70]—contains barely five pages of

---

[68] 405 A.2d 119, 120 (Del. 1979).

[69] *Chaverri*, 220 A.3d at 921.

[70] The dissent makes the point that "the change in case law, as it relates to the preclusive effect of the EDLA's dismissal, is extraordinary," (*See* Dissent *infra* text accompanying notes 77-78), "particularly when viewed through the prism of our intervening decision in *Gramercy*." *See* Dissent *infra* text accompanying notes 191-92. If that is so then one might reasonably argue that if any "change in case law" cast a doubt on the validity of the 2013 *McWane* dismissal order, it was the change effected by *Chavez* and *Gramercy*. And *Gramercy* was decided on October 17, 2017, 14 months before the Plaintiffs filed their Rule 60(b)(6) motion.

substantive text and only three unremarkable exhibits. The simplicity of the motion itself cannot be squared with the Plaintiffs' contention that it took seven months to untangle and explain the procedural history of this case in the motion.[71]

And finally, we appreciate the dissent's concern that the complexity of the case that arguably contributed to the delay was in large part the product of the "extraordinary resistance exerted by the defendants over three decades."[72] But it was not improper—or, for that matter, unfounded—in our view for the Superior Court to comment on how the Plaintiffs' strategic choices are at least a partial cause of their present predicament. In sum we conclude that the Superior Court's finding that the Plaintiffs' delay in filing the motion to vacate the then six-year-old judgment of dismissal was not an abuse of discretion.

## V. CONCLUSION

Ultimately, the question is whether the Superior Court abused its discretion in denying the Plaintiffs' motion to reopen the judgment as untimely and for failure of the Plaintiffs to show extraordinary circumstances. As we recently observed, when we review a trial court for abuse of discretion, "[t]he question is not whether we agree with the court below, but rather [whether] we believe 'that the judicial mind

---

[71] Likewise, Plaintiffs' counsel's suggestion at oral argument that the work related to the motion necessitated the hiring of a new lawyer (*See* Dissent *infra* text accompanying notes 167-68) is hard to square with the brevity of the motion.

[72] *See* Dissent *infra* text accompanying notes 158-59.

in view of the relevant rules of law and upon due consideration of the facts of the case could reasonably have reached the conclusion of which complaint is made.'"[73] Applying that standard, we find that there was no abuse of discretion. We therefore affirm the judgment of the Superior Court.

---

[73] *In re Asbestos Litig (Shaw v. American Friction)*, 228 A.3d 676, 681 (Del. 2020) (*quoting Pitts v. White*, 109 A.2d 786, 788 (Del. 1954)).

**VALIHURA**, Justice, dissenting:

In this suit, workers on overseas banana plantations ("Farmworkers") accuse a group of American companies of manufacturing or using a pesticide while concealing its toxicity and failing to take precautions or warn them of the danger. They have sought redress in multiple fora. In 2013, the Superior Court dismissed their suit here in Delaware based upon *forum non conveniens*, following the dismissal of a similar suit in the Eastern District of Louisiana ("EDLA"). This Court affirmed the Superior Court's dismissal.

In dismissing the case, the Superior Court deferred to the EDLA ruling that this suit was time-barred. Based on that premise, and its assumption that the Eastern District's judgment had preclusive effect, the Superior Court correctly applied our law as it then existed, namely, the '*McWane* standard' for *forum non conveniens*.[74] But in 2016, the Third Circuit, in a related case, disavowed the preclusive power of the EDLA's dismissal. Thus, the Third Circuit's ruling, although not binding on our state courts, contradicts what had been a foundational point in the Superior Court's dismissal. Subsequently, this Court in 2017 held in *Gramercy* that *McWane's* discretionary standard, tilted in favor of defendants, would not apply where the dismissal of the prior filed action lacked preclusive effect.[75] Perhaps because the parties below did not focus on *Gramercy*, the Superior Court

---

[74] *See Chaverri v. Dole Food Co.* (*Chaverri III*), 2013 WL 5977413, at *2 (Del. Super. Nov. 8, 2013), *aff'd*, 2014 WL 7367000 (Del. Oct. 20, 2014) ("Plaintiffs' Delaware Action meets the three prongs of the *McWane* test and must be dismissed" because the doctrine applies "after a first filed action is adjudicated to conclusion in a court of competent jurisdiction."). The Superior Court also observed that the EDLA action and the *Chaverri* case pending before it "not only arise from the same nucleus of facts, but they have identical parties and allegations." *Id.* The plaintiffs in the Superior Court case are foreign nationals from Costa Rica, Panama, and Ecuador.

[75] *Gramercy Emerging Markets Fund v. Allied Irish Banks, P.L.C.*, 173 A.3d 1033, 1040 (Del.

26

was of the view that, "[n]o change in the law governing the *McWane* Doctrine has occurred since the Court issued the November 13 Dismissal Order."[76]   But *Gramercy* did add an important clarification to the *McWane* doctrine.   Following *Gramercy*, the *Marquinez* decision in 2018 triggered the disparate treatment of the Delaware plaintiffs by allowing the federal Delaware plaintiffs to proceed while the plaintiffs in Superior Court could not.[77]

Based on the Third Circuit's ruling in *Chavez*, and the *Marquinez* decisions, the Farmworkers on December 31, 2018 moved to reopen the *forum non conveniens* dismissal under Superior Court Rule 60(b)(6).   The Superior Court refused, holding that any change in case law was not controlling, and that the plaintiffs had waited unreasonably long to file their motion.

I believe that the change in case law, as it relates to the preclusive effect of the EDLA's dismissal, is extraordinary under the highly unique circumstances here, and that the Superior Court judgment should be reopened.   Absent vacatur with remand to the Superior Court, these plaintiffs will be prevented from having their case heard on the merits, despite having pursued their rights vigilantly for more than a quarter of a century in multiple states and countries.   That injustice is magnified as they are now being treated

---

2017) ("If the prior lawsuit is no longer pending, absent an unusual situation such as *Lisa*'s where the Delaware action was solely brought to facilitate recovery in the prior action, *McWane* falls out of the calculus.   The fact that the prior action was dismissed may, of course, have great relevance. But that is because principles of preclusion and *stare decisis* might dictate dismissal.").

[76] *Chaverri v. Dole Food Co. Inc.* (*Chaverri V*), 220 A.3d 913, 924 (Del. Super. 2019).

[77] The *Chavez* plaintiffs and the Farmworkers here were both among the consolidated plaintiffs in the Eastern District suit.   *See* Supp. Cert. to Supp. Br., ex. A, *Chaverri v. Dole Food Co., Inc.* N12C-06-017 ALR (Del. Super. Sept 11, 2013) (D.I. 74) (Civil docket for the Eastern District case, 2:11-cv-01289-CJB-KWR, dated Sept. 10, 2013).

differently from similarly situated plaintiffs whose cases followed nearly identical procedural paths, but who filed in a federal courthouse just blocks up the street. Further, in *Marquinez*, the Third Circuit certified to this Court a question of Delaware law, and reversed its own lower federal court out of deference to our ruling. Comity between sovereigns weighs in favor of us showing the same respect to the Third Circuit now, where the Third Circuit has determined a question of federal law differently than the determination previously made by the Superior Court, and where the impact of that determination means that the federal plaintiffs can now proceed and the Superior Court plaintiffs cannot. These decisional changes in this unique, factually connected case do indeed constitute extraordinary circumstances. Accordingly, I respectfully dissent.

*I.*

Farmworkers allege in their Superior Court complaint that they worked on banana plantations in Costa Rica, Ecuador, and Panama where they were exposed to nematocide dibromochloropropane ("DBCP") in the course of their work.[78] They further allege that Appellees Shell Oil Company, the Dow Chemical Company, the Occidental Chemical

---

[78] Compl. at ¶¶ 125–57, *Chaverri v. Dole Food Co.,* N12C-06-017 ALR (Del. Super. June 1, 2012). The Majority says that it is setting forth "the facts and the extensive procedural history of this case to the extent necessary to decide this appeal." Maj. Op. at 1. Its truncated version of the procedural history implies that it does not deem the omitted parts of that history (which is a good deal of it) relevant. Although the Majority agrees with me that "all circumstances surrounding the delay" should be considered, Maj. Op. at 23, it lines up only the outer edges and corners of the puzzle and ignores the large mosaic in the middle. Rule 60(b) is an equitable mechanism for relief and context matters. The context includes a fuller account of the plaintiffs' procedural trek through the judicial system. The more inclusive description reveals that the Majority's suggestions that plaintiffs engaged in unreasonable delay and tactical risk-splitting are hard to square with the full picture.

28

Corporation, and AMVAC Chemical Corporation ("Manufacturers") developed and manufactured DBCP,[79] and that the remaining Appellees[80] ("Plantations") employed it on their banana plantations, or are the parent companies or successors in interest to the firms who did.[81]

The Farmworkers allege that the Manufacturers and Plantations knew about the health hazards DBCP posed, but sold and deployed it without warning the Farmworkers or taking the appropriate precautions.[82] The Farmworkers claim that as a result of their exposure, they have suffered numerous adverse health effects.[83] All allege compromised fertility, while the individual plaintiffs allege a variety of health complaints, including renal and ocular problems, liver disease, and cancer.

In 1993, a number of plaintiffs claiming injuries from DBCP exposure on farms in various countries filed a putative class action in Texas state court.[84] One of the Plantations impleaded a company partially owned by the Israeli government and alleged that it was the true manufacturer. That foreign firm removed the case to federal court in the Southern District of Texas under the Foreign Sovereign Immunities Act (the "FSIA").[85] There, the

---

[79] Compl. at ¶ 44, 61, 78, 84.

[80] Chiquita Brands International, Inc.; Chiquita Brands LLC; Chiquita Fresh North America, LLC; Del Monte Fresh Produce NA Inc.; Dole Food Co. Inc.; Dole Fresh Fruit Company; Standard Fruit Company; and Standard Fruit and Steamship Company.

[81] *Id.* at ¶¶ 95–101, 106, 107, 109–14.

[82] *Id.* at ¶ 181.

[83] *Id.* at ¶¶ 125–57.

[84] *Id.* at ¶ 158. Four separate actions were filed in Texas state court: *Delgado v. Shell Oil Co.*; *Jorge Carcamo v. Shell Oil Co.*; *Valdez v. Shell Oil Co.*; and *Isae Carcamo v. Shell Oil Co.*

[85] *Delgado v. Shell Oil Co.* (*Delgado I*), 890 F.Supp. 1324, 1336 (S.D. Tex. 1995). FSIA applies

defendants sought dismissal on *forum non conveniens* grounds contending that the balance

of the relevant private and public interests points clearly toward trial in the plaintiffs' home

countries.

Along with that motion, those defendants also sought an injunction prohibiting

further DBCP litigation elsewhere in the United States.[86]  Fearing that the District Court

might grant a broad injunction, thousands of DBCP plaintiffs, including some of the

Farmworkers, filed another putative class action in Florida state court.[87]  The defendants

in that suit removed the case to the District Court for the Middle District of Florida.[88]

On July 11, 1995, the Texas District Court concluded that because the Israeli entity

was a foreign sovereign, and because it had waived its foreign sovereign immunity, its

presence conferred federal subject matter jurisdiction over the entire controversy.[89]  It also

conditionally granted dismissal for *forum non conveniens*, but that order included a

provision ("Return Clause") by which a plaintiff, following a final dismissal for lack of

---

in civil cases in which a foreign sovereign nation is a party.   FSIA was originally enacted as Pub.
L. 94-583, 90 Stat. 2891 [94th Cong., 2d Sess., Oct. 21, 1976].   If an action is brought in state
court and a party is a foreign sovereign nation or instrumentality thereof, such nation or
instrumentality may remove the action to federal court, even if the claims arise only under state
law.   28 U.S.C. §§ 1441(d), 1603(a).   This was the second attempt at removal in the Texas
litigation.   The District Court had remanded after the first removal, rejecting a Manufacturer's
claim that 'arising under' jurisdiction existed on the basis of federal preemption of the causes of
action.  *Rodriguez v. Shell Oil Co.*, 818 F.Supp. 1013, 1018 (S.D. Tex. 1993).

[86] *Blanco v. AMVAC Chem. Corp.* (*Blanco I*), 2012 WL 3194412, at *2 (Del. Super. Aug. 8, 2012)
(reciting the DBCP procedural history).

[87] *Chaverri v. Dole Food Co.* (*Chaverri I*), 896 F.Supp.2d 556, 562 n.14 (E.D. La. 2012).

[88] *Id*. at 562.

[89] *See Delgado I*, 890 F.Supp. at 1340 (noting the Israeli firm's waiver of sovereign immunity and
personal jurisdiction defenses).

jurisdiction in a foreign country, could return and, upon proper motion, "the court will resume jurisdiction over the action as if the case had never been dismissed for f.n.c."[90]

In the July 1995 decision, the Texas District Court also enjoined the plaintiffs there, and "anyone acting in active concert or participation" with them from filing additional DBCP cases.[91] Because that injunction was not as broadly worded as the DBCP plaintiffs had initially feared, they voluntarily dismissed the Middle District of Florida case the following day.[92] On October 27, 1995, the court entered its Final Judgment which included an injunction that permanently enjoined the plaintiffs, intervenors, and others from commencing actions based on other DBCP-related claims.[93]

The Texas plaintiffs appealed this dismissal, and also promptly pursued claims in the courts of their home countries, including in Costa Rica.[94] Asserting that Costa Rica's courts disclaimed jurisdiction, the Texas plaintiffs sought to revive the Texas suit in 1996

---

[90] *Delgado I*, 890 F.Supp. at 1375. *See also Robinson v. TCI/US W. Comm. Inc.*, 117 F.3d 900, 907 (5th Cir. 1997) (failure to include a return jurisdiction clause in an f.n.c. dismissal constitutes a *per se* abuse of discretion); *Delgado v. Shell Oil Co. (Delgado II)*, 322 F.Supp.2d 798, 807 (S.D. Tex. 2004) ("The Fifth Circuit's requirement that f.n.c. dismissals contain return jurisdiction clauses, and its explanations of the reasons for this requirement, make it clear that return jurisdiction clauses are intended to ensure that cases subject to those dismissals remain subject to the dismissing court's jurisdiction.").

[91] *Delgado I*, 890 F.Supp. at 1376.

[92] *See Chaverri I*, 896 F.Supp.2d at 562 n.14 (noting that the Middle District of Florida suit was dismissed the day after the Texas court limited the injunction to only the named plaintiffs in the Texas litigation, rather than the entire putative class).

[93] *Delgado II*, 322 F.Supp.2d at 801 (citing to *Delgado v. Shell Oil Co.*, C.A. No. H-94-1337 Mem. Op. (Docket Entry 493) (S.D. Tex. Mar. 15, 2004)) (reciting case history).

[94] *Id*. at 801–02.

while their appeal of the *forum non conveniens* judgment was still pending.[95]   The District Court refused to reinstate the case before the Fifth Circuit ruled.[96]   On October 19, 2000, the Fifth Circuit affirmed the District Court's decisions on both removal and judgment concluding that the Israeli entities were "foreign states" under the FSIA.   On April 10, 2001, the United States Supreme Court denied certiorari.[97]   By early February 2002, the parties in Texas submitted a joint status report urging the court to defer ruling on plaintiffs' motion for reinstatement pending the Supreme Court's decision on a petition for certiorari filed in a Ninth Circuit case.[98]

On April 22, 2003, the United States Supreme Court resolved a circuit split, and siding with the Ninth Circuit, it ruled that the Israeli entities, as indirect subsidiaries of the State of Israel, were not instrumentalities of Israel under the FSIA at any time, and thus, they were not capable of conferring subject matter jurisdiction on the federal district court.[99]

---

[95] *Id*.

[96] *Id*. at 802.

[97] *Delgado v. Shell Oil Co.* (*Delgado III*), 231 F.3d 165, 176, 182–83 (5th Cir. 2000), *cert. denied* 532 U.S. 972 (2001).

[98] *Delgado II*, 322 F.Supp.2d at 802.   The Ninth Circuit held in *Patrickson v. Dole Food Co.*, 251 F.3d 795, 808 (9th Cir. 2001) that the Israeli entities were not instrumentalities of a foreign state and therefore there was no federal subject matter jurisdiction over the cases in which these entities had been named as third-party defendants.

[99] *Dole Food v. Patrickson*, 538 U.S. 468, 477, 123 S.Ct. 1655, 1662 (2003).   Because Israel did not own a majority of shares in the subsidiary at issue, the Supreme Court held that those subsidiaries were not foreign instrumentalities, and therefore, the defendant could not invoke FSIA for purposes of removal.   538 U.S. at 477–78.

On May 13, 2003, the Texas plaintiffs and intervenors filed a motion to vacate the final judgment and injunction issued by the Southern District of Texas, and sought to have the case remanded. In a March 15, 2004 ruling, the Southern District of Texas vacated its previous injunction preventing the named plaintiffs from bringing or intervening in any DBCP-related litigation "because it has prospective effect that denies plaintiffs a day in court," but it denied the request to vacate its *forum non conveniens* dismissal.[100] In June 2004, that court remanded the matter back to Texas state courts to decide the reinstatement motion.[101] In 2006, the Texas state court granted the motion to reinstate and allowed the plaintiffs and intervenors to file an eighth amended putative class action complaint.[102] The Texas defendants removed the case a third time, claiming the Class Action Fairness Act conferred federal jurisdiction.[103] The Southern District of Texas rejected this argument, and, finding no basis for federal jurisdiction, remanded the case back to Texas state courts.[104] The parties agree that Texas state courts denied class certification on June 3, 2010.[105]

---

[100] *Delgado v. Shell Oil Co.*, C.A. No. H-94-1337 Mem. Op. (Docket Entry 493) (S.D. Tex. Mar. 15, 2004).

[101] *Delgado II*, 322 F.Supp.2d at 813, 817.

[102] *See In re Standard Fruit Co.*, 2005 WL 2230246, at *1 (Tex. App. Sept. 13, 2005) (denying Plantations petition for a writ of mandamus to the Texas state trial court to reverse its decision to revive the suit).

[103] *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 212 (3d Cir. 2016) (*en banc*) (citing *Carcamo v. Shell Oil Co.*, No. 09–cv–258 (KMH) (S.D. Tex. Dec. 18, 2009)).

[104] *Id*.

[105] Op. Br. at 3; Ans. Br. at 7. The trial court cites to this decision as *Carcamo v. Shell Oil Co.*, No. 93-C-2290 (Tex. Dist. Ct. Brazoria Cty. June 3, 2010).

After that denial, individual DBCP litigants filed a multitude of individual cases in various courts in the United States. Because of the passage of time, all of the DBCP cases were potentially time-barred. In order for the DBCP plaintiffs' individual suits to survive motions on the statute of limitations, they would need to find a jurisdiction which would toll the applicable limitations period for the time the Texas motion for class certification was pending.

In earlier cases, the United States Supreme Court had held that in federal courts considering federal causes of action, "the commencement of a class action suspends the applicable statute of limitations as to all asserted class members of the class who would have been parties had the suit been permitted to continue as a class action."[106] That so-called 'intra-jurisdictional tolling' continues until class certification is denied.[107] To survive anticipated motions to dismiss on the basis of the applicable statutes of limitations, plaintiffs needed to find a jurisdiction which would both adopt the federal rule on intra-jurisdictional tolling *and* extend it to toll their own statutes of limitations for plaintiffs who

---

[106] *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 553–554 (1974) (holding that, "the commencement of [a] class suit tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.").

[107] *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 354 (1983). In *Crown, Cork & Seal Co.*, the Supreme Court clarified that the filing of a class action tolls the statute of limitations as to all asserted members of the class, not just as to intervenors. Thus, tolling applied to those members of the putative class who, following the denial of class certification, prefer to intervene and those who prefer to file individual actions. Specifically, the Court stated that, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied," and then, "[a]t that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action." *Id*.

are putative members of classes in lawsuits in other jurisdictions, "cross-jurisdictional tolling."

Jose Blanco was among the DBCP plaintiffs filing individual suits following Texas court's denial of class certification, and he filed suit in the Delaware Superior Court in July, 2011.[108] The Farmworkers, among others, filed the Eastern District suit in the EDLA in late May and early June of the same year.[109] At that time, neither Louisiana nor Delaware had ruled on whether they recognized cross-jurisdictional tolling.[110]

In both Louisiana and Delaware, the defendants sought to dismiss the case as time-barred.[111] In each, the corresponding plaintiffs sought to invoke cross-jurisdictional tolling. Recognizing that the same dilemma of finding a forum which would recognize cross-jurisdictional tolling applied to every other potential DBCP plaintiff from the

---

[108] *See generally Blanco I*, 2012 WL 3194412.

[109] *Chaverri I*, 896 F.Supp.2d 556 at 559. The locations of these filings, in Louisiana and Delaware, make sense since the Port of New Orleans is a major hub in the banana trade where many of the Plantations and Manufacturers have significant operations. Oral argument video 11:19 – 12:20. https://livestream.com/accounts/ 5969852/events/9319197/videos/212100209/player. Almost all of the Manufacturers and Plantations are Delaware entities. Compl. ¶¶ 4–16.

[110] The Court of Chancery adopted the federal intra-jurisdictional tolling rule not long after Blanco filed in the Superior Court. *Dubrof v. Wren Holdings, LLC*, 2011 WL 5137175, at *13 (Del. Ch. Oct. 28, 2011).

[111] Because Louisiana law is based on the civil law rather than the common law, in lieu of a statute of limitations that state has a 'liberative prescription.' *See* LSA-C.C. Art. 3447 ("Liberative prescription is a mode of barring of actions as a result of inaction for a period of time."). The two legal doctrines are conceptually similar, but whereas statutes of limitations "are merely procedural bars to the enforcement of obligations, civilian prescriptive periods act to extinguish the civil [i.e. legal] obligation to which they apply." *Eaglin v. Eunice Police Dep't*, --- So.3d ---, 2018 WL 3154744, at *4 (La. June 27, 2018) (citing *La. Health Serv. & Indem. Co. v. McNamara*, 561 So.2d 712, 718 (La. 1990)) (bracketed text in the original).

35

putative Texas class, the Superior Court immediately informed the parties in *Blanco*, in a May 31, 2012 letter, of an intent to deny the defendants' motion before issuing, at a later date, a full written opinion. The letter, in effect, invited other plaintiffs to file in Delaware Superior Court because Delaware law recognized the concept of cross-jurisdictional tolling.[112]

Not surprisingly, immediately after the Superior Court issued that letter, and while the dispositive motion based on Louisiana's time bar remained pending in the EDLA suit, the Farmworkers filed suit in the Delaware Superior Court. At the same time, other plaintiffs in the EDLA suit filed in the District of Delaware, later consolidated into the *Chavez* action.[113] The *Chavez* plaintiffs and Farmworkers share the same counsel, but were split between Delaware Superior Court and the Delaware federal court out of concern that certain litigation costs would become prohibitively expensive in Superior Court.[114]

---

[112] *See Blanco I*, 2012 WL 3194412 at *6 n.37 (noting that, "[t]he [Superior] Court recognized, and counsel confirmed at the hearing on the motion, that this action could affect other plaintiffs' decision on where to file suit. Because the two-year statute of limitations expired on June 3, 2012, the Court notified counsel, by letter, that it intended to deny defendants' motion. In particular, the Court informed the parties that the prior class action had tolled plaintiff's statute of limitations.").

[113] *Chavez*, 836 F.3d at 213–14. Still other EDLA plaintiffs filed in the District of Delaware on June 1, 2012 as well, but were consolidated into the *Marquinez* litigation instead of *Chavez*. *Marquinez v. Dole Food Co.* (*Marquinez IV*), 2020 WL 1474803, at *1 (D. Del. Mar. 26, 2020).

[114] The Majority attributes the Farmworkers decision to file in both state and federal court to a strategic decision "designed *in the court's eyes* to 'distribute the risk to the putative class.'" Maj. Op. at 10. However, counsel was asked directly by the Court to explain the decision to file in both courts. As counsel explained:

> "Given the number of plaintiffs I represented, my co-counsel at the time. . . advised me that the cost of managing litigation for so many plaintiffs in the state of Delaware could become prohibitive. . . [he] advised me the year prior the special master assigned to the asbestos litigation had assessed over $100,000 in fees to the plaintiff. In that case it could be spread out among different law firms, but I was

The Manufacturers and Plantations worked to shut down both of these actions. They moved to dismiss the Superior Court action on *forum non conveniens* grounds,[115] and to dismiss the District of Delaware action under the federal first-filed rule.[116]   The District of Delaware granted dismissal.[117]   Both of these dismissal motions relied on the existence of the prior-filed EDLA litigation.

Meanwhile, the EDLA dismissed the Farmworkers' case with prejudice as time-barred.[118]   Applying Louisiana law, the District Court assumed that Louisiana would adopt cross-jurisdictional tolling, but that this would toll the suit only until the Texas *forum non*

---

the only lawyer with these cases and I feared being confronted with costs that would be prohibitive.   And so I filed 30 cases in the state court of Delaware where I believed the issues had already been resolved, and then the balance of the cases in federal court where I did not believe I would be confronted with the same kind of costs because of the U.S. magistrate system that provides the same kind of oversight that the appointed special master does."

Although the Majority's assumed reason implies an element of strategic forum shopping, I have no reason to doubt the veracity of counsel's explanation, the soundness of the Third's Circuit's explicit refutation of any suggestion of forum shopping by the plaintiffs, or the Superior Court's own identification of the defendants as the one who engaged in "repeated forum shopping removals and technical dismissals."   *See infra* n.165.

Oral argument video 17:10 – 18:16.   https://livestream.com/accounts/5969852/events/9319197/videos/212100209/player.   Plaintiffs' counsel further explained to this Court:

Mr. Hendler:   I respectfully submit that it wouldn't have made sense to go to federal court except for the cost consideration, which I feared was going to be prohibitive for a small two lawyer firm like my own to bear, and so that's the only reason I made that decision. . . .

Oral argument video: 46:28 – 46:51. https://livestream.com/accounts/5969852/events/9319197/videos/212100209/player.

[115] *Chaverri III*, 2013 WL 5977413 at *1.

[116] *Chavez*, 836 F.3d at 214.

[117] *Chavez v. Dole Food Co.*, 2012 WL 3600307, at *2 (D. Del. Aug. 21, 2012).

[118] *Chaverri I*, 896 F.Supp.2d at 574.

37

*conveniens* dismissal in 1995.[119]   The Farmworkers appealed, but while that appeal was pending, Louisiana state courts rejected cross-jurisdictional tolling entirely.[120]   The Louisiana Supreme Court reasoned that a state law establishing a tolling rule for class actions provided for intra-jurisdictional tolling only.[121]   Thereafter, the Fifth Circuit affirmed the EDLA's dismissal.[122]

While that was occurring, the *Blanco* defendants sought interlocutory review from this Court of the Superior Court's decision to recognize cross-jurisdictional tolling through the June 2010 class certification ruling.   The Superior Court certified the appeal in the form of a single certified question: whether Delaware recognizes cross-jurisdictional tolling.[123]   In 2013, this Court answered in the affirmative.[124]

## A.

Following these proceedings, in November 2013, the Superior Court decided the question of the Manufacturers' and Plantations' motion to dismiss Farmworkers' *Chaverri*

---

[119] *Chaverri I*, 896 F.Supp.2d at 568–69.

[120] *Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So.3d 1011, 1020 (La. 2012).

[121] *See id.* ("After examining the words of the article, we find, therefore, that the plain language of La. C.C.P. art. 596 dictates that the suspension of prescription provided therein applies only to 'petition[s] brought on behalf of a class' in the state courts of Louisiana.").

[122] *Chaverri v. Dole Food Co.* (*Chaverri IV*), 546 F. App'x 409, 414 (5th Cir. 2013) (per curiam) (unreported case).   The EDLA dismissal was expressly "with prejudice."   *Chaverri I*, 896 F.Supp.2d at 574.   The Fifth Circuit did not discuss prejudice, but affirmed the EDLA without qualification.

[123] *Blanco v. AMVAC Chem. Corp.* (*Blanco II*), 2012 WL 5215301 (Del. Super. Sept. 18, 2012). The Superior Court declined to certify an appeal of its ruling that the 1995 *forum non conveniens* dismissal ended tolling.   *Id*.

[124] *See Dow Chem. Corp. v. Blanco* (*Blanco III*), 67 A.3d 392, 399 (Del. 2013).

case for *forum non conveniens*.[125] In reliance on two cases from this Court, *McWane*[126] and *Lisa*,[127] the Superior Court dismissed the *Chaverri* case.[128] As the Superior Court explained, *McWane* instructed trial courts to freely exercise their discretion to stay or dismiss a case on *forum non conveniens* grounds when "(1) there is a prior action pending elsewhere (2) in a court capable of doing prompt and complete justice, and (3) involving the same parties and the same issues."[129] *Lisa* extended this doctrine by treating the first element as satisfied when earlier-filed litigation in another forum is no longer pending, but was dismissed with prejudice.[130] The Superior Court reasoned that *McWane* compelled dismissal on *forum non conveniens* grounds "after a first filed action is adjudicated to conclusion in a court of competent jurisdiction."[131] It observed that the *McWane* standard seeks to avoid the risk of inconsistent and conflicting rulings.[132] In 2014, this Court summarily affirmed the Superior Court's decision.[133]

---

[125] *Chaverri III*, 2013 WL 5977413 at *1.

[126] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Engineering Co.*, 263 A.2d 281 (Del. 1970).

[127] *Lisa, S.A. v. Mayorga*, 993 A.2d 1042 (Del. 2010).

[128] *Chaverri III*, 2013 WL 5977413 at *2.

[129] *Id*. at *1 (citing *McWane*, 263 A.2d at 283).

[130] *Id*. at *2 (citing *Lisa*, 993 A.2d at 1048).

[131] *Id*. (the Superior Court observed that, "[i]n *Lisa*, the Delaware Supreme Court found that the Delaware action could not proceed after a dismissal with prejudice of the Florida action because it would risk the possibility of inconsistent and conflicting rulings, which is exactly the outcome that the *McWane* doctrine seeks to avoid.").

[132] *Id*.

[133] *Chaverri IV*, 2014 WL 7367000, at *1.

Following our summary dismissal, this Court's mandate issued on November 6, 2014. But, other DBCP litigation continued in the Delaware *federal* courts. The Farmworkers draw the Court's attention to three decisions in two such Delaware federal companion cases.

The first of these decisions is *Chavez v. Dole Food Co.*[134] The *Chavez* litigants had also been plaintiffs in the EDLA litigation who filed in Delaware after the Superior Court announced an intention to deny statute of limitations dismissal. Whereas the Farmworkers filed in the Superior Court, the *Chavez* plaintiffs filed in the United States District Court for the District of Delaware.[135] Whereas Farmworkers were dismissed under *McWane*'s *forum non conveniens* doctrine, the *Chavez* plaintiffs were dismissed under the federal "first-filed rule."[136] Just as this Court affirmed the trial court's dismissal, a divided three-judge panel of the Third Circuit initially affirmed the *Chavez* dismissal.[137] However, on September 2, 2016, a unanimous eleven-member *en banc* panel of the Third Circuit reversed the three-judge Third Circuit panel's dismissal, holding that the prior EDLA dismissal did not exert a claim preclusive effect as a matter of federal common law.[138]

---

[134] 836 F.3d 205 (3d Cir. 2016) (*en banc*).

[135] *Id*. at 209–210.

[136] *Chavez,* 2012 WL 3600307 at *2; *see also N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) ("The first-filed rule states that, in determining the proper venue, where there are two competing lawsuits, the first suit should have priority.") (internal quotation omitted).

[137] *Chavez v. Dole Food Co., Inc.*, 796 F.3d 261, 271 (3d Cir. Aug. 11, 2015).

[138] *Chavez*, 836 F.3d at 232. As the Third Circuit explained, federal common law looks to state law, and under their reading, Louisiana's statutory framework for *res judicata* contains an

Without that preclusion, the Third Circuit found the first-filed doctrine inapplicable and permitted the *Chavez* plaintiffs' suit to advance.[139]

The second and third decisions relied upon by the Farmworkers in their Rule 60(b)(6) motion both relate to the companion *Marquinez v. Dow Chem. Co.* case. The District of Delaware had granted the Manufacturers and Plantations summary judgment on the basis of the statute of limitations.[140] As the District Court saw it, Delaware's acknowledgement of cross-jurisdictional tolling would have ended with the 1995 *forum non conveniens* dismissal in the Southern District of Texas.[141] During the *Marquinez* plaintiffs' appeal, the Third Circuit certified a question to this Court, asking us to determine when class action tolling ended.[142] In one of the two decisions the Farmworkers cite as

---

applicable exception. *Id*. The Third Circuit held that Louisiana's doctrine of *res judicata* included a "safety valve" for "exceptional circumstances." *Id*. at 229. It reasoned that, "the plaintiffs here 'vigorously pursued these claims, only to be met at every moment with procedural hurdles.'" *Id*. Accordingly, it held that "a Louisiana court, faced with these facts, would conclude that the Byzantine procedural history of this case merits an exception to Louisiana's normal rules of claim preclusion." *Id*. The Majority discusses *Chavez* only as to its holding disfavoring dismissals with prejudice under the first-filed rule. Maj. Op. at 7.

[139] *Chavez*, 836 F.3d at 234.

[140] *Marquinez v. Dow Chem. Co.* (*Marquinez I*), 45 F.Supp.3d 420, 426 (D. Del. 2014).

[141] *Id*. at 424.

[142] *Marquinez v. Dow Chem. Co.* (*Marquinez II*), 183 A.3d 704, 711 (Del. 2018). The full question was:

> "Does class action tolling end when a federal district court dismisses a matter for forum non conveniens and, consequently, denies as moot "all pending motions," which include the motion for class certification, even where the dismissal incorporated a return jurisdiction clause stating that "the court will resume jurisdiction over the action as if the case had never been dismissed for f.n.c.," *Delgado v. Shell Oil Co.*, 890 F.Supp. 1324, 1375 (S.D. Tex. 1995)? If it did not end at that time, when did it end based on the procedural history set forth above?"

*Id*. at 705. Though the Superior Court in *Blanco* ruled that the cross-jurisdictional tolling continued despite the Texas *forum non conveniens* decision, it had refused to certify that aspect of

41

constituting extraordinary circumstances, this Court determined that the limitations period remained tolled until the June 3, 2010 denial of class certification.[143] As we explained, the Return Clause continued to contemplate litigation as a class in Texas, and so the principles justifying cross-jurisdictional tolling continued to apply despite the 1995 *forum non conveniens* dismissal.

Lastly, the third of the Farmworkers' three cases is the Third Circuit's decision following their receipt of our certified answer in *Marquinez*, where the Third Circuit reversed the judgment and remanded the case to the Delaware District Court.[144] This 2018 decision allowed the Delaware federal plaintiffs to proceed.

On December 28, 2018, Appellants sought leave from the Superior Court to file a Motion to Vacate the judgment under Superior Court Rule 60(b)(6). The Farmworkers argued that *Chavez* and the two *Marquinez* decisions effected a change in decisional law constituting extraordinary circumstances justifying reopening the judgment dismissing the Delaware Superior Court case. The Superior Court denied relief on two independent

---

its ruling for interlocutory appeal and so we did not rule on it then. *Blanco II*, 2012 WL 6215301; *Blanco III*, 67 A.3d at 399.

[143] *Marquinez II*, 183 A.3d at 711.

[144] *See Marquinez v. Dole Food Co.*(*Marquinez III*), 724 F. App'x 131, 132 (3d Cir. 2018) (unreported case):

> "IT IS HEREBY ORDERED that the District Court's orders entered September 19, 2013, and May 27, 2014, and its final judgment entered September 22, 2014, are VACATED.
>
> IT IS FURTHER ORDERED that this appeal is REMANDED to the District Court for further proceedings consistent with the Delaware Supreme Court's opinion in *Marquinez* and this Court's opinion in *Chavez*."

42

grounds—that the *Chavez* and *Marquinez* cases were "irrelevant and non-controlling law," and that Farmworkers unreasonably delayed in filing their Motion.[145]

## II.

Superior Court Civil Rule 60(b) provides the mechanism for a party to reopen or otherwise obtain relief from an adverse judgment. Rule 60(b) permits six categories of justification for such relief, the last of which is the residual "any other reason justifying relief from the operation of the judgment."[146] Relief under this residual category requires a showing of an "extraordinary situation or circumstance."[147] Even on such a showing, the movant is "obliged to act without unreasonable delay" in making a Rule 60(b)(6) Motion or relief will be denied.[148] The decision of whether to grant vacatur under Rule 60(b)(6) lies in the sound discretion of the trial court and will be disturbed only on an abuse of that discretion.[149]

### A. The Farmworkers Did Not Delay Unreasonably

The Superior Court concluded that "[a]s a preliminary matter, the timeliness of Plaintiffs' filing precludes the Court from reaching the merits of their Motion."[150] It reached that conclusion by construing this Court's holding in *Schremp v. Marvel* as standing for the proposition that the time a party takes to file a Rule 60(b)(6) motion should

---

[145] *Chaverri V*, 220 A.3d at 925 (Del. Super. 2019).

[146] Del. Super. Ct. Civ. R. 60(b).

[147] *Jewell v. Div. of Soc. Servs.*, 401 A.2d 88, 90 (Del 1979).

[148] *Schremp v. Marvel*, 405 A.2d 119, 120 (Del. 1979) (per curiam).

[149] *Cox v. Gen. Motors Corp.*, 239 A.2d 706, 707 (Del. 1967).

[150] *Chaverri V*, 220 A.3d at 920.

be compared to the time available for other forms of relief had they been procedurally available.[151] In the trial court's view, even allowing for the most recent case to be the measure of timeliness, the seven month gap before filing the instant motion was unreasonable.[152] The Farmworkers justified this delay by reference to counsel's large workload from this and other ongoing DBCP litigation, and the extraordinary complexity of this case.[153] As the trial court saw it, this was a problem of their own making and did not excuse or render reasonable a seven month delay in filing.[154]

"Although there is no set time limit in which a party must file a Rule 60(b) motion, the movant must exercise diligence and act without unreasonable delay."[155] The prohibition on 'unreasonable delay' requires the court to strike a balance between two competing interests: the integrity of the judicial process that a meritorious Rule 60(b) motion implicates, and the finality of judgments.[156] Because, according to *Schremp*, the

---

[151] *Id*. at 921 (citing *Schremp*, 405 A.2d at 121). The *Schremp* Court in the cited holding measured an unexplained two-month delay in filing a motion to vacate a stipulated dismissal entered by his counsel without his knowledge or consent with the time limits for requesting a new trial, reargument, or filing appeal.

[152] *Id*. at 922.

[153] Plfs. Mot. to Vacate at ¶ 9, *Chaverri v. Dole Food Co., Inc.*, N12C-06-017 ALR (Del. Super. Dec. 31, 2018) (D.I. 101).

[154] *See Chaverri V*, 220 A.3d at 922 ("the purported 'Gordian Knot' in which Plaintiffs find themselves is the result of Plaintiffs' own strategy of filing duplicative actions across the country. The Court cannot overlook the delay simply because it took Plaintiffs time to untie and package that history for presentation to the Court.").

[155] *Shipley v. New Castle Cty.*, 975 A.2d 764, 770 (Del. 2009). Even "a four or five year delay, alone and without more, does not preclude relief under Rule 60(b)." *Scureman v. Judge*, 1998 WL 409153, at *3 (Del. Ch. June 26, 1998).

[156] *MCA, Inc. v. Matsushita Elec. Indus. Co., Ltd.*, 785 A.2d 625, 635 (Del. 2001).

plaintiffs' delay must be viewed considering all relevant circumstances -- which include the twenty-seven years of litigation obstacles they were forced to address -- the Farmworkers' delay, whether two years or seven months, is not unreasonable.

The trial court dismissed the Farmworkers' reasons for their delayed filing, all of which related to the complexity of the case, because it found them to be difficulties of their counsel's own creation and hence unreasonable.[157] In Superior Court's words, that complexity was "the result of Plaintiffs' own strategy of filing duplicative actions across the country."[158] I disagree. My Exhibit A is intended to assist by graphically illustrating the relevant timeline, extraordinary resistance exerted by the defendants over nearly three decades, and the extraordinary persistence of the Farmworkers. Measured against that period, the gap between the Farmworkers' pivotal cases and their motion is comparatively brief.

Further, *Schremp* supports my view. There, the plaintiff waited almost two years to sue the defendant who negligently backed her car into his causing approximately $708 in damage. Plaintiff lost at trial and a year later, his attorney dismissed the case. Plaintiff claims he did not learn of his attorney's dismissal of his case until seven months after the dismissal. He then waited two more months to file a Rule 60(b) motion which was denied based on its untimeliness. In our affirmance of that dismissal, we criticized the plaintiff for asking this Court to "look at the case only from his point of view, disregarding that of

---

[157] *Chaverri V*, 220 A.3d at 922.

[158] *Id.*

45

the defendant."[159]  We said that after three years, the "defendant had a right to hope and conclude that the litigation was finally at an end."[160]  We specifically noted that, "[n]one of the delay we have identified was in any way charged to defendant."[161]

In *Schremp*, plaintiff had his day in court, losing after trial, whereas here, the plaintiffs have yet to have the merits of their case heard anywhere.  And whereas the defendant in *Schremp* had caused no delay, defendants here have engaged the Farmworkers for over twenty-seven years in an exhausting array of procedural maneuvers in multiple fora.  Most importantly, we said twice in the nine-paragraph opinion in *Schremp*, that we should "consider *all of the circumstances*."[162]  That does not mean narrowly focusing only on the relatively short deadlines for filing an appeal and seeking reargument.  It means taking a realistic and holistic view of the entire case with the ultimate goal of ensuring that justice is done.  Here, justice is not served by blaming the delay on the Farmworkers, and then shutting the courthouse doors to them.  Even the Superior Court itself had observed earlier in *Blanco*:

> "A fairer reading of the procedural history here is that defendants have attempted to tranquilize these claims through repeated forum shopping removals and technical dismissals, playing for time and delay and striving to prevent, or arguably frustrate, the claims from ever being heard on the merits in any court. . .  Any prejudice defendants suffer due to lapse of time was due, in part, to their own decision to wage the extended procedural war delaying the prior action as reflected in the procedural history."[163]

[159] 405 A.2d at 120.

[160] *Id*. at 121.

[161] *Id*.

[162] *Id*. at 120 (emphasis added).

[163] *Blanco*, 2012 WL 3194412, at *12.

46

The Third Circuit in *Chavez* made similar comments and referred to "[a] series of byzantine procedural developments" that eventually led the plaintiffs out of Texas and into Louisiana.[164]   They described this case as a procedural "Gordian knot."[165]

The Farmworkers have continuously sought judicial redress for their injuries in the proper channels.   To the extent that their choice to file in the EDLA resulted in the application of the liberative prescription and led to the *forum non conveniens* dismissal here, at the time they filed, neither the courts of Louisiana nor Delaware had ruled on whether cross-jurisdictional putative class actions toll limitations periods.   That the Farmworkers guessed wrong and failed to anticipate that we would recognize such tolling and the Supreme Court of Louisiana would not is hardly blameworthy.   Indeed, within twenty-four hours of the Delaware Superior Court indicating that Delaware would recognize such tolling, Farmworkers filed their suit here.   The Third Circuit also emphasized that these plaintiffs were not forum shopping.[166]   It said that, "the plaintiffs were not scouring multiple jurisdictions for more advantageous substantive law or more

---

[164] *Chavez*, 836 F.3d at 209.

[165] *Id.* at 212–13 ("Deciding where to file suit therefore required the plaintiffs to predict how courts in Delaware and Louisiana would, in the absence of clear precedent, untangle the procedural Gordian knot that this litigation had become.").   In the legend, at the time of the Macedonian invasion of the Persian Achaemenid Empire, a large intricate knot existed in the Phrygian satrapy at Gordium.   According to an oracle, the one who could unravel the knot would rule all of Asia. In the most popular account, after arriving in Gordium with his army and contemplating the knot, Alexander the Great cut the knot with his sword.   Arrian, *Anabasis of Alexander* 82–83 (Edward James Chinnock, trans. 1884).

[166] *Chavez*, 836 F.3d at 222 ("The plaintiffs were not trying to game the system by filing duplicative lawsuits.   They were trying to find one court, and only one court, willing to hear the merits of their case.").

47

sympathetic fact-finders," rather, "they were trying to find one court -- and only one court -- willing to reach the merits of their claims."[167]

The proliferation of suits and the procedural complexity in this case are largely the result of the Manufacturers' and Plantations' strategy, and not the Farmworkers', and they are responsible for years, if not decades, of delay. Although the Farmworkers' seven-month delay in filing for Rule 60(b) relief is concerning to me, in light of the entirety of the complex litigation history -- now spanning twenty-seven years, the time they took to file the Rule 60(b) motion, which filing necessitated their hiring a new lawyer, is not unreasonable.[168]

---

[167] *Id.* at 232.

[168] During oral argument before this Court plaintiffs' counsel stated:

> Mr. Hendler: This was a very complicated record and the fact of the matter is I had to go outside of my firm and see additional attorney resources to help support the effort. That lawyer had to spend time getting up on the record and the facts, and researching the issues, drafting the briefs, and we nevertheless got it filed within seven months of the Third Circuit's decision in *Marquinez*.

Oral argument video: 48:10 – 48:38. https://livestream.com/delawaresupremecourt/events/9319197/videos/212100209. Again, the Majority suggests that these representations by plaintiffs' counsel are not credible. *See* Maj. Op. at 24, n.71 ("Likewise, Plaintiffs' counsel's suggestion at oral argument that the work related to the motion necessitated the hiring of a new lawyer is hard to square with the brevity of the motion."). The Majority seems to assume that the page length of the Motion exactly mirrors the work needed to file the Motion. I note that before filing their Motion, the Farmworkers sought the Court's leave to exceed the court-imposed page limits. As Farmworkers explained in the motion to vacate, "[i]n the seven months, Plaintiffs' counsel's law firm consisting of two active attorneys, has been actively advancing the overall litigation by conferring with opposing counsel to manage discovery and timetables for preparing the *Chavez* and *Marquinez* plaintiffs' cases for trial pending in federal court and actively researching and pursuing resources to complete this motion with all deliberate speed." Rather than question the credibility of counsel, I would rather think that it did take considerable time for new counsel to review and evaluate the litigation history spanning over two decades, and that any diligent lawyer would have done so prior to filing a motion to vacate.

48

### B. Extraordinary Circumstances Are Present Here

The presence or absence of extraordinary circumstances justifying Rule 60(b)(6) relief is subject to a totality of the circumstances test.[169] The Delaware courts have followed the parallel federal rule.[170] Rule 60(b) is an equitable mechanism for relief.[171]

Not only do our state courts look to federal precedent in Rule 60(b) analyses, but in this particular case, our Delaware courts and the Delaware federal courts have been intertwined procedurally and have cooperated substantively. This cooperation and deference was most clearly manifest after plaintiffs appealed both of the *Marquinez* orders to the Third Circuit and the Third Circuit certified to this Court the question of when class action tolling ended. Not surprisingly, the Third Circuit accepted and deferred to our decision and reversed and remanded the *Marquinez* litigation to the Delaware District Court "*for further proceedings consistent with the Delaware Supreme Court's opinion in*

---

[169] *See Ungar v. Palestinian Liberation Org.*, 599 F.3d 79, 87 (1st Cir. 2010) (reversing a district court's denial of Rule 60(b)(6) relief because it "did not analyze the totality of the circumstances but, rather, focused on what it improvidently believed to be a categorical bar to relief.").

[170] *Jewell*, 401 A.2d at 90.

[171] *See Johnson v. Spencer*, 950 F.3d 680, 700–01 (10th Cir. 2020) ("We have described Rule 60(b)(6) as a 'grand reservoir of equitable power to do justice in a particular case.'") (quoting *Kile v. United States*, 915 F.3d 682, 687 (10th Cir. 2019)); *Cox v. Horn*, 757 F.3d 113, 122 (3d Cir. 2014) (stating that, "we have long employed a flexible, multifactor approach to Rule 60(b)(6) motions, including those built upon a post-judgment change in the law, that takes into account all the particulars of a movant's case," and observing that, "[t]he fundamental point of 60(b) is that it provides a grand reservoir of equitable power to do justice in a particular case.") (quoting *Hall v. Cmty. Mental Health Ctr.*, 772 F.2d 42, 46 (3d Cir. 1985)); *Jewell*, 401 A.2d at 90 ("[Rule 60(b)(6)]. . . vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice.") (quoting *Klapprott v. United States*, 335 U.S. 601, 615 (1949)).

*Marquinez and this Court's opinion in Chavez*."[172]  Although no party here argues that

*Chavez* is *binding* on us, a unanimous decision by an eleven-member *en banc* panel of the

Third Circuit, issued in companion federal litigation is entitled to our corresponding

deference here.[173]

The Superior Court's and the Majority's refusal to credit *Chavez* with the deference

it deserves results in the Delaware federal courts and our state court treating the EDLA

judgment differently.  This is problematic given the resulting disparate impact on these

plaintiffs.  This result, which now closes the Delaware Superior Court's doors to these

plaintiffs, is even more ironic considering that it was the Delaware Superior Court in

*Blanco* in 2012 that essentially told the plaintiffs that the Delaware Superior Court's doors

were open to them.

I agree that a mere change in decisional law occurring after a judgment becomes

final ordinarily does not constitute extraordinary circumstances under Rule 60(b)(6).[174]

---

[172] *Marquinez III*, 724 F.App'x at 132 (emphasis added).

[173] *Chavez* made clear that the preclusive effect of a timeliness dismissal entered by a federal court, whether exercising its diversity or federal question jurisdiction, is a question of *federal* law.  *See Chavez*, 836 F.3d at 225.  The preclusive effect of a federal court's judgment is a question of federal common law and a federal court sitting in diversity jurisdiction will apply the preclusion law of the state in which it sits.  *Cal. State Teachers' Retirement Sys. v. Alvarez*, 179 A.3d 824, 841 (Del. 2018) (citing *Pyott v. La. Mun. Police Employees' Retirement Sys.*, 74 A.3d 612, 616 (Del. 2013)).  Further, the claim-preclusive effect of a dismissal issued by a federal diversity court varies by jurisdiction, because the federal diversity court must look to state substantive law to assess cross-jurisdictional claim preclusion.  In applying these principles, the Third Circuit in *Chavez* held that, "Louisiana's statutorily-codified equitable exception to *res judicata* applied to the present facts," and thus, "the timeliness dismissals entered by the Louisiana District Court do not create a *res judicata* bar to the plaintiffs' Delaware suits."  836 F.3d at 231–232.

[174] *Travelers Indemn. Co. v. Sarkisian*, 794 F.2d 754, 757 (2d Cir. 1986).

50

Even a ruling demonstrating that a court outright misapplied the laws of its own or another jurisdiction generally does not, without more, justify relief.[175]   But here there *is* more.

Courts have stepped in, on occasion, to address the injustice suffered when changes in decisional law unfairly impact similarly situated plaintiffs in a factually-connected case. For example, in *In re Terrorist Attacks on September 11, 2001*, the United States Court of Appeals for the Second Circuit addressed the injustice caused when multiple plaintiffs of one tort obtained different outcomes because of a change in decisional law.[176]   In that case, the Second Circuit found that "the interest in finality is outweighed by the interest in treating victims of the same tort consistently."[177]

Similarly, in *Gondeck v. Pan Am. World Airways, Inc.*, the United States Supreme court vacated an order denying certiorari and reversed a circuit court's judgment that affirmed the denial of a death-benefits award after learning that another circuit court had upheld an award to a different claimant under the same federal law.   *Gondeck* involved a claim for death benefits under the Longshoremen's and Harbor Workers' Compensation Act.   Two men were killed in the same accident.   An award made by the Department of Labor to the survivors of one man was set aside by the United States District Court for the Southern District of Florida.   The Fifth Circuit affirmed.   The Supreme Court denied

---

[175] *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 748-49 (5th Cir. 1995).   The *Batts* court also noted a number of exceptions to this general rule, including where two cases arising out of the same transaction result in conflicting judgments.   *Id*. at 748, n.6.

[176] 741 F.3d 353 (2d Cir. 2013) (citing *Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25, 26–27, 86 S.Ct. 153, 15 L.Ed.2d 21 (1965) (per curiam)).

[177] *Id*. at 357.

certiorari. Then, the survivors of a second man killed in the same accident litigated in the Eastern District of Virginia and lost but the Fourth Circuit reversed and upheld the right to recover. The survivors in the first case then petitioned for rehearing in the Supreme Court. The Supreme Court granted the petition and reversed the Fifth Circuit. The United States Supreme Court thus required the two circuits to construe the same federal statute the same way because one petitioner stood alone in not receiving an award and "'the interests of justice would make unfair the strict application of our rules.'"[178]

Following this principle, the Tenth Circuit Court of Appeals, in *Pierce v. Cook & Co., Inc.*,[179] granted Rule 60(b) relief based on a post-judgment change in the law arising out of the same accident as that in which the plaintiffs were injured. In this diversity case, the plaintiff sued a truck driver's employer for his negligence in causing a traffic accident. Summary judgment was granted in favor of the employer. Subsequently, a suit brought in state court by one of the passengers in the *Pierce* plaintiffs' car (who was injured in the same accident) resulted in a change in Oklahoma law creating liability on the part of the employer for the negligence of the carrier.[180] Because "[t]he federal courts in which plaintiffs were forced to litigate ha[d] given them substantially different treatment than that received in state court by another injured in the same accident,"[181] the Tenth Circuit

---

[178] 382 U.S. at 27 (citing *United States v. Ohio Power Co.*, 353 U.S. 98, 99, 77 S.Ct. 652, 1 L.Ed.2d 683 (1957)).

[179] 518 F.2d 720 (10th Cir. 1975) (en banc), *cert. denied*, 423 U.S. 1079 (1976).

[180] *Hudgens v. Cook Indus., Inc.*, 521 P.2d 813, 816, 78 A.L.R.3d 902 (Okla. 1973) (overruling *Marion Machine, Foundry & Supply Co. v. Duncan*, 101 P.2d 813 (Okla. 1940)).

[181] *Pierce*, 518 F.2d at 723.

granted Rule 60(b) relief. The court stated that, "[i]n diversity jurisdiction cases the results in federal court should be substantially the same as those in state court litigation arising out of the same transaction or occurrence." [182] It held that "[t]he unusual combination of events which have occurred make the situation *extraordinary*."[183] Here, the subsequent change in the law effected by *Chavez* occurred in a factually-related case and has now resulted in disparate treatment of the state court and federal court plaintiffs based upon those courts' different treatment of the preclusive effect of the EDLA dismissal.[184]

Although in *Pierce*, the plaintiffs were forced to litigate in federal court after the defendant removed the case, here the plaintiffs were given assurance by the Delaware Superior Court that defendants' efforts to resist cross-jurisdictional tolling would fail. They lost only when Delaware courts' assessment of the preclusive effect of the EDLA

---

[182] *Id.* (emphasis added).

[183] *Id*. (emphasis added). The Tenth Circuit distinguished its own earlier precedent where the changes in decisional law had arisen in unrelated litigation. *See Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir. 1958). The *Pierce* court stated that, "Collins differs from the instant case in that the decisional change came in an unrelated case," whereas, in *Pierce*, "it came in a case arising out of the same accident as that in which the plaintiffs now before us were injured." 518 F.2d at 723.

[184] Notably, the Oklahoma Supreme Court decision came more than three years after the Tenth Circuit's dismissal of the federal plaintiff's claims. Nevertheless, the Tenth Circuit granted the plaintiff's Rule 60(b)(6) motion. *See also Tsakonites v. Transpacific Carriers Corp.*, 322 F. Supp. 722 (S.D.N.Y. 1970) (granting Rule 60(b)(6) relief where more than five years intervened between the district court's judgment and a subsequent United States Supreme Court decision which indicated that the district court judgment was error). Again, delay in filing such a motion should be avoided. But it is not necessarily preclusive. Litigants seeking this extraordinary relief would be wise to not test the bounds of the court's mercy by delaying their application. A defendant's interest in finality, even in circumstances like those presented here, must also be weighed carefully in the balancing of interests.

judgment diverged with the Third Circuit's later determination. Just as in *Pierce*, compelling reasons exist here for having the federal and state courts afford uniform treatment of the EDLA dismissal to these plaintiffs who complain of the same injuries and had to file individual actions elsewhere. And since the preclusive effect of that federal judgment is a question of federal common law,[185] the *en banc* unanimous decision of the Third Circuit on that question should carry great weight.

Delaware courts have acknowledged that important and novel issues of other sovereigns are often best determined by their courts where practicable.[186] *Pierce* found Rule 60(b)(6) implicated when fellow plaintiffs of one tort received different results in state and federal court after the state court promulgated changes in the law in a way that affected the outcome. Comity counsels that we do the same when the converse situation arises -- the federal court changed the law in this interrelated case in a materially significant way that results in one set of plaintiffs having access to the courts but not the other.[187]

---

[185] *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508, 121 S.Ct. 1021, 1028, 149 L.Ed.2d 32 (2001).

[186] *See Martinez v. E.I. DuPont de Nemours & Co., Inc.*, 86 A.3d 1102, 1109–1110 (Del. 2014) ("If, as our jurisprudence holds, significant weight should be accorded the neutral principle that important and novel issues of Delaware law are best decided by Delaware courts, then it logically follows that our courts must acknowledge that important novel issues of other sovereigns are best determined by their courts where practicable.").

[187] The Majority disagrees that *Chavez* undercuts the dismissal order and states that these cases "do not involve conflicting applications of the same law." Maj. Op. at 22. They then say that the Farmworkers, by filing in both state and federal court, "created a foreseeable risk that procedural rules of the two jurisdictions may lead to different results." Maj. Op. at 22. Yet the Majority ignores the key holding in *Chavez* critical to this analysis, namely, that the prior EDLA dismissal did not exert a claim preclusive effect as a matter of federal common law. *See Chavez*, 836 F.3d at 225 ("a timeliness dismissal entered by a federal court, whether exercising its diversity or federal question jurisdiction, is always a question of federal law."). By applying *McWane* and *Lisa*, the Superior Court necessarily gave preclusive effect to the ruling while the Third Circuit did not.

## III. Conclusion

A bedrock principle of Delaware law is "that every right, when withheld, must have a remedy, and every injury its proper redress."[188] The purpose of our *forum non conveniens* doctrine, is "to discourage forum shopping and promote the orderly administration of justice by recognizing the value of confining litigation to one jurisdiction whenever that is both possible and practical."[189] It is not advanced by closing the last courthouse door to a litigant. Nor is the value of "confining litigation to one jurisdiction"[190] advanced by reducing *one* to *none*.[191]

---

Thus, these courts gave conflicting treatment to the same judgment in a factually intertwined case. The Majority acknowledges that where the Delaware action is the second-filed action, and a first filed action in another jurisdiction has been dismissed on procedural grounds, *McWane* is not the proper focus for analysis. Maj. Op. at 20–21. Yet *McWane* was the focus of the Superior Court's analysis. And the Superior Court incorrectly stated that "[n]o change in the governing *McWane* Doctrine has occurred since the Court issued the November 13 Dismissal order," but clearly, *Gramercy* (decided on October 27, 2017) had effected a change in the *McWane* doctrine, as the Majority agrees. The combination of *Gramercy*, *Chavez* and *Marquinez* create the kind of conflict giving rise to an "extraordinary circumstance" justifying relief.

[188] *Dorsey v. State*, 761 A.2d 807, 816 (Del. 2000) (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES *109).

[189] *Lisa*, 993 A.2d at 1047.

[190] *United Phosphorus, Ltd. v. Micro-Flo*, 808 A.2d 761, 764 (Del. 2002).

[191] In *In re Asbestos Litig.*, a majority of this Court affirmed the dismissal of the plaintiff's case where the plaintiff was two months late with her expert reports (which were ultimately completed and filed before her motion for change of trial date was heard). Justice Vaughn's dissent, which I joined, observed that, "[t]he good cause analysis requires a trial court to consider the unique circumstances of the case before it," and that "[a] court applying the good cause standard should be especially mindful of one overarching consideration – Delaware's strong judicial policy that courts should decide cases on their merits." We remarked further that, "[t]he unfairness to plaintiff in this case is substantial" since "[t]his is not a case where, despite denial of the motion for trial grouping, the plaintiff can still proceed to trial." We also noted that there, the Superior Court had "applied the good cause standard in a rigid, inflexible manner," and had "failed to engage in a fair balancing of all relevant factors." 228 A.3d at 684–85, 689 (Del 2020). Those same policy concerns that animated my dissenting vote there apply here where these plaintiffs, despite twenty-seven years of litigation, will never have their case heard on the merits by any

In answering the pivotal questions of whether *Chavez*, together with *Marquinez* present extraordinary circumstances, I believe that they do, particularly when viewed through the prism of our intervening 2017 decision in *Gramercy*. Under *Gramercy*, a court must determine whether relief is appropriate by engaging in an examination of the six classic "*Cryo–Maid* factors"[192] without a presumption as to whether relief is or is not appropriate.[193] By contrast, under the *McWane* standard, the court generally does not perform an analysis of these factors.[194] Viewing the Superior Court's 2013 dismissal with the benefit of the Third Circuit's decision in *Chavez* and our own decision in *Gramercy*, the Third Circuit's conclusion in *Chavez*, that the prior-filed EDLA dismissal was not entitled to preclusive effect, would lead to a different result, namely, the 2013 dismissal would not have been within the ambit of *Lisa*. Rather, *Gramercy*'s intermediate approach would apply instead of *McWane* and *Lisa*. *Chavez*, accordingly, produced an extraordinary circumstance, the effect of which was compounded by the later rulings in *Marquinez*. I agree with my esteemed colleagues in the Majority that as a general matter,

---

court.

[192] *Gen. Foods Corp. v. Cryo–Maid, Inc.*, 198 A.2d 681 (Del. 1964). Those six factors are (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises, if appropriate; (4) the pendency or nonpendency of a similar action in another jurisdiction; and (5) whether or not the controversy is dependent upon the application of Delaware law which the courts of this State more properly should decide than those of another jurisdiction; and (6) all other practical problems that would make the trial of the case easy, expeditious and inexpensive. *Gramercy*, 173 A.3d at 1036–37.

[193] *Id.* at 1044.

[194] *Chadwick v. Metro Corp*, 856 A.2d 1066, 2004 WL 1874652, at *2 (Del. Aug. 12, 2004) (TABLE) ("Our courts generally do not consider a motion to dismiss under traditional *forum non conveiens* analysis when a similar action is pending elsewhere.").

"[i]ntervening changes in the law *rarely* justify relief from final judgments under 60(b)(6)."[195]   But this just happens to be one of those rare cases.

For the foregoing reasons, I respectfully dissent.

---

[195] *Cox*, 757 F.3d at 121 (3d Cir. 2014).

**Exhibit A**

